FILED

05/12/2026

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 25-0531

DA 25-0531

IN THE SUPREME COURT OF THE STATE OF MONTANA

2026 MT 105N

IN THE MATTER OF:

K.S.,

A Youth in Need of Care.

APPEAL FROM:    District Court of the Second Judicial District,
In and For the County of Butte-Silver Bow, Cause No. DN-2022-11
Honorable Robert J. Whelan, Presiding Judge

COUNSEL OF RECORD:

For Appellant:

Gregory D. Birdsong, Birdsong Law Office, Santa Fe, New Mexico

For Appellee:

Austin Knudsen, Montana Attorney General, Cori Losing, Assistant
Attorney General, Helena, Montana

Matthew C. Enrooth, Butte-Silver Bow County Attorney, Butte,
Montana

Jim Reintsma, Assistant Attorney General, Child Protection Unit,
Helena, Montana

Submitted on Briefs:  March 11, 2026

Decided:  May 12, 2026

Filed:

_____
Clerk

Justice Ingrid Gustafson delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 Appellant, J.S. (Mother), natural mother of K.S., appeals from the District Court's Decree of Guardianship asserting it was made in error as: (1) the District Court erred by failing to provide Mother a treatment plan and make reasonable efforts towards reunification after remand; (2) the District Court erred in taking judicial notice of prior proceedings; (3) the District Court erred by failing to timely hold a dispositional hearing or order a treatment plan, denying visitation, and failing to provide reasonable reunification efforts; and (4) the District Court erred in finding further efforts at reunification would be unproductive. We affirm.

¶3 On February 28, 2022, the Department of Health and Human Services, Child and Family Division (the Department) removed K.S., then 7 years old, from Mother's care. On that same date, Mother was arrested for possession of dangerous drugs and obstruction of a law enforcement officer. K.S. was placed with his maternal grandparents, with whom he and Mother had previously lived. On August 22, 2022, following a contested adjudication hearing which Mother did not attend, the District Court adjudicated K.S. as a youth in need of care (YINC). On April 10, 2024, the Department petitioned for the maternal grandparents to be appointed K.S.'s co-guardians. Following a contested guardianship

2

hearing, the District Court granted the guardianship petition on September 24, 2024. Mother appealed. On February 5, 2025, the State filed a notice of concession with this Court, in which the Department sought reversal of the September 24, 2024 Findings of Fact, Conclusions of Law and Decree of Guardianship and vacation of the August 31, 2022 order adjudicating K.S. a YINC and granting temporary legal custody to the Department. Based on Mother's appeal and the State's concession, this Court issued its order of February 11, 2025, reversing the District Court's adjudication and guardianship order and remanding the matter for a new adjudication hearing.

¶4 Following remand and upon Mother's stipulation, on May 1, 2025, the District Court again adjudicated K.S. as a YINC. On May 16, 2025, the Department filed another petition seeking to have the maternal grandparents appointed K.S.'s co-guardians. Mother objected, asserting the Department had not engaged in reasonable reunification efforts. Following a contested hearing on the petition, the District Court granted the guardianship petition from which Mother appeals.[1]

¶5 Mother asserts that for a prolonged period of time after the initial adjudication of K.S. in August 2022, not only was no dispositional hearing conducted, but no treatment plan was provided within the statutorily-mandated time frame, and no good cause was shown for these deficiencies. In mid-July 2023, over 16 months post-removal, the court finally approved a treatment plan for Mother. By the time the Department filed its first guardianship petition, Mother had only received therapy for a few months and at the time

---

[1] In their respective briefs, the parties each provide more extensive detail of the facts and procedural history of this cause.

of granting the first guardianship petition, the Department had not engaged in reasonable reunification efforts as required by § 41-4-423, MCA. Mother further asserts that upon remand the District Court erred in taking judicial notice of prior proceedings and in granting the second guardianship petition without first giving Mother reasonable opportunity to work on her treatment plan.

¶6      The Department counters that any claim of the District Court violating Mother's due process at the original disposition is moot, the completion of a treatment plan is not required in order for the court to appoint guardians of a YINC, and the District Court did not violate Mother's due process rights when, without objection, it took judicial notice of prior proceedings but did not rely on the infirm adjudication/disposition hearing in granting the second guardianship petition. The Department asserts that upon the initial guardianship, K.S. made therapeutic progress and was able to have safe, comfortable contact with Mother as he no longer feared she would kidnap him. With vacation of the initial guardianship, K.S. regressed therapeutically and did not want to have contact with Mother and his therapists believed that forced contact with Mother would cause psychological harm. The Department did not believe additional treatment tasks for Mother would allow K.S. to overcome his trauma to be timely reunified with Mother. As the Department made reasonable efforts to reunify Mother with K.S. and no additional treatment plan tasks would result in K.S. successfully addressing his trauma for timely reunification with Mother, the District Court did not abuse its discretion when it appointed the maternal grandparents as K.S.'s co-guardians.

¶7     We review a district court's decision to grant or deny a petition filed in a dependent neglect action for abuse of discretion. *See generally In re J.D.*, 2025 MT 274, ¶ 10, 425 Mont. 123, 580 P.3d 63. An abuse of discretion occurs when a district court acts arbitrarily, without employment of conscientious judgment, or exceeds the bounds of reason resulting in substantial injustice. *In re J.D.,* ¶ 10. Pursuant to § 41-3-423, MCA, the Department is required to make reasonable efforts to avoid removal and to reunify the family.

¶8     This is a sad, troubling, and difficult case complicated by the overwhelming trauma experienced by K.S. while in Mother's care.

¶9     While we have concern with some of the Department's actions, the record on a whole does not support reversal on any of the bases Mother asserts. Albeit not as soon as one would prefer, the Department provided Mother services of a treatment plan, assisted her with mental health services, and provided K.S. significant mental health services with both a psychiatrist and a therapist. Although Mother completed her treatment plan tasks and continued to engage with ongoing mental health services, this did not equip her to parent a high-needs, highly traumatized child such as K.S., nor did it quell K.S.'s repeated trauma with interaction or contact with Mother.

¶10    We agree with Mother that the Department's consent to the remand upon Mother's first appeal appears to have been somewhat less than genuine, leading Mother to believe that if she gave up her appeal, she would be provided the opportunity to rebuild her relationship and reunify with K.S. Given the Department's near-immediate filing of a second guardianship petition after Mother's stipulation post-remand to adjudication of K.S.

5

as a YINC, it's pretty clear that was not the Department's intention, but rather the Department did not want to risk having to provide her that opportunity through an opinion, issued on the merits, of this Court.

¶11 That said, the Department can petition at any time for a guardianship and there was no statutory requirement that the District Court first hold a dispositional hearing before hearing the guardianship petition. If the Department, however, desires to build and maintain trust with stakeholders of the child welfare system, it must truly be dedicated to reunification—proactively providing services to address the needs of children and their parents in a forthright manner. Here, although there was no legal requirement precluding the filing of the second guardianship petition, it would have been more appropriate for the Department to fully explain to Mother why it believed it had no more services to offer her to timely reunify with K.S. given the unique trauma he experienced in her care and which continued to surface upon contact with her. Rather than immediately filing a second guardianship petition, it would have been more appropriate to request ruling from the District Court after hearing as to what, if any, additional services the Department needed to offer Mother post-remand. At such hearing, the Department would have been able to present evidence by K.S.'s therapeutic team and Mother would have been provided opportunity to cross-examine witnesses and present her own evidence, if any. While the situation could have been addressed more appropriately, it is not legal error and is harmless as it is apparent from the record that more services to Mother were not going to impact the time frame of K.S. resolving his trauma to the extent he could be timely reunified with Mother. K.S. was receiving services and working through his trauma, but the reality is he

6

continued to have significant trauma upon interaction and contact with Mother, as she was the primary source of his trauma.

¶12 Mother next takes issue with the District Court taking judicial notice of proceedings occurring before remand. There is no legal basis that precludes a court from taking judicial notice of prior proceedings even if they occurred prior to a remand. There is also no basis to conclude that any failures on the part of the Department to meet its statutory obligations that occurred before remand are moot as advocated by the Department. However, vacation of the original adjudication, along with the opportunity for Mother to appear with counsel and be heard at another adjudication hearing, remedied the due process violation associated with the first adjudication hearing.

¶13 The unfortunate situation here is that because of Mother's significant mental health problems, K.S. was traumatized in her care. Albeit not as soon as one would prefer, the right services were put in place for Mother and for K.S., but K.S. continues, despite treatment and a stable living environment, to experience considerable emotional dysregulation when confronted with having to interact with or see Mother. While Mother was addressing her mental health needs, she was unable for whatever reason to understand K.S.'s significant trauma and, as she is the source of K.S.'s trauma, she has not been able— and will not be able in a reasonable time—to provide the parenting K.S. needs to address his trauma without exacerbating it.

¶14 While the Department and the District Court could have handled the situation better—such as being more forthright with Mother, protecting her right to have counsel present at hearings to alleviate the need for remand, and providing a treatment plan and

7

services more expeditiously—at the end of the day, we conclude the District Court did not err in granting the guardianship. The Department provided reasonable efforts, but the trauma experienced by K.S. resultant from his care by Mother remained excessively high and interfered with any timely chance for reunification. The District Court did not abuse its discretion by granting the guardianship petition.

¶15 Finally, Mother asserts that as the Decree of Guardianship provided the co-guardians the powers and duties provided in § 72-5-231, MCA—which include consenting to the marriage or adoption of the ward—the decree must be vacated as it improperly empowers the guardian the authority to take action that cannot be commenced without termination of Mother's parental rights.

¶16 In response, the Department advocates that although §§ 41-3-444(4) and 72-5-231(3), MCA, allow the guardian to consent to the adoption of the ward, § 42-2-301(5), MCA, limits when the guardian of a ward may consent to the adoption. Section 42-2-301(5), MCA, limits the ability to consent to adoption in situations where "both parents are dead or their rights have been judicially terminated and the guardian has authority by order of the court appointing the guardian to consent to the adoption." Thus, the co-guardians are precluded from consenting to K.S.'s adoption unless Mother's rights are terminated. We agree with the Department's interpretation as to how §§ 41-3-444(4), 72-5-231(3), and 42-2-301(5), MCA, are cohesively harmonized together to give effect to all and avoid absurd results. *See* § 1-2-101, MCA. Reversal of the decree on this basis is not warranted.

¶17    We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions.  In the opinion of the Court, the case presents a question controlled by settled law or by the clear application of applicable standards of review.

¶18    Affirmed.

/S/ INGRID GUSTAFSON

We Concur:

/S/ CORY J. SWANSON
/S/ KATHERINE M. BIDEGARAY
/S/ BETH BAKER
/S/ JIM RICE